# EXHIBIT B

## ASSIGNMENT

BY THIS ASSIGNMENT, the undersigned CNY Fair Housing Inc., Housing Research & Advocacy Center, Inc., d/b/a the Fair Housing Center for Rights & Research, Inc., The Fair Housing Partnership of Greater Pittsburgh, Inc., Housing Opportunities Made Equal of Buffalo, Inc., Housing Opportunities Made Equal of Cincinnati, Inc., Fair Housing Opportunities of Northwest Ohio, d/b/a The Fair Housing Center, and the Fair Housing Center of Central Indiana,  the Fair Housing Resource Center, Inc., Miami Valley Fair Housing Center, Inc., Lexington Fair Housing Council, Inc., Fair Housing Advocates Association, Inc., and Fair Housing Contact Service, Inc. (collectively the "Fair Housing Groups"), for the sum of  one dollar ($1.00) and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, does hereby irrevocably assign, transfer, convey and set over, without recourse, to each Owner identified in Exhibit A hereto, (individually an "Owner" and collectively the "Owners"), as it relates to the subject housing complex owned by each Owner as identified on Exhibit A, their success and assigns, all right, title to and interest in (1) all of  the claims and causes of action the Fair Housing Groups, or any of them, have against Mussachio Architects, P.C. and Marc Mussachio (collectively "Mussachio") that are set forth in the Complaint, dated March 22, 2022 in the civil action captioned *CNY Fair Housing Inc., et al v. Clover Construction Management, Inc., et al.*, Civ. Case No. 5:22-cv-278(BKS/ML) (a copy of which is attached hereto as Exhibit B), and (2) all of the claims and causes of action the Fair Housing Groups, or any of them, may have against Mussachio for design and construction-related violations of the FHA 42 U.S.C. § 3604(f), et seq. relating to the properties identified on Exhibit A hereto.  The Owners may in their own name for their own benefit prosecute, collect, settle, compromise and grant releases on said claims as in their sole discretion they deem advisable.

This Assignment may be executed in multiple counterparts, each of which shall constitute an original but all of which shall constitute but one and the same instrument. One or more counterparts of this Assignment may be delivered via telecopier and/or via e-mail pdf files, with the intention that they shall have the same effect as an original counterpart hereof.

**IN WITNESS WHEREOF,** these presents are executed as of the 15th day of August, 2022.

CNY Fair Housing, Inc.

By: *Sally Santangelo*      Date: 08/17/2022

Name: Sally Santangelo
Title: Authorized Representative


Housing Opportunities Made Equal of Buffalo, Inc.

By: _____   Date: _____

Name: Deanna Eason

Title: Authorized Representative


Housing Research & Advocacy Center, Inc.
d/b/a Fair Housing Center for Rights & Research, Inc.

By: _____   Date: _____

Name: Kris Keniray

Title: Authorized Representative


Fair Housing Opportunities of Northwest Ohio d/b/a The Fair Housing Center

By: _____   Date: _____

Name: George Thomas

Title: General Counsel and Authorized Representative

**IN WITNESS WHEREOF,** these presents are executed as of the 15th day of August, 2022.

CNY Fair Housing, Inc.

By: _____   Date: _____

Name: Sally Santangelo
Title: Authorized Representative

Housing Opportunities Made Equal of Buffalo, Inc.

By: _Deanna Eason_   Date: _8/17/2022_

Name: Deanna Eason

Title: Authorized Representative

Housing Research & Advocacy Center, Inc.
d/b/a Fair Housing Center for Rights & Research, Inc.

By: _____   Date: _____

Name: Kris Keniray

Title: Authorized Representative

Fair Housing Opportunities of Northwest Ohio d/b/a The Fair Housing Center

By: _____   Date: _____

Name: George Thomas

Title: General Counsel and Authorized Representative

**IN WITNESS WHEREOF,** these presents are executed as of the 15th day of August, 2022.

CNY Fair Housing, Inc.

By: _____     Date: _____

Name: Sally Santangelo
Title: Authorized Representative

Housing Opportunities Made Equal of Buffalo, Inc.

By: _____     Date: _____

Name: Deanna Eason

Title: Authorized Representative

Housing Research & Advocacy Center, Inc.
d/b/a Fair Housing Center for Rights & Research, Inc.

By: _____     Date: ___08/17/2022_____

Name: Carrie Pleasants

Title: Authorized Representative

Fair Housing Opportunities of Northwest Ohio d/b/a The Fair Housing Center

By: _____     Date: _____

Name: George Thomas

Title: General Counsel and Authorized Representative

**IN WITNESS WHEREOF,** these presents are executed as of the 15th day of August, 2022.

CNY Fair Housing, Inc.

By: _____    Date: _____

Name: Sally Santangelo
Title: Authorized Representative


Housing Opportunities Made Equal of Buffalo, Inc.

By: _____    Date: _____

Name: Deanna Eason

Title: Authorized Representative


Housing Research & Advocacy Center, Inc.
d/b/a Fair Housing Center for Rights & Research, Inc.

By: _____    Date: _____

Name: Kris Keniray

Title: Authorized Representative


Fair Housing Opportunities of Northwest Ohio d/b/a The Fair Housing Center

By: _____    Date: __8/18/2022__

Name: George Thomas

Title: General Counsel and Authorized Representative

The Miami Valley Fair Housing Center, Inc.

By: _Miranda Wilson_____   Date: __8/18/22_____

Name: Miranda Wilson

Title: Authorized Representative


Fair Housing Contact Services, Inc.

By: _____   Date: _____

Name: Tamala Skipper

Title: Authorized Representative


Fair Housing Advocates Association, Inc.

By: _____   Date: _____

Name: Vince Curry

Title: Authorized Representative


Lexington Fair Housing Council, Inc.

By: _____   Date: _____

Name: Art Crosby

Title: Authorized Representative

The Miami Valley Fair Housing Center, Inc.

By: _____    Date: _____

Name: Miranda Wilson

Title: Authorized Representative


Fair Housing Contact Services, Inc.

By: _____  2022.08.17    Date: __August 17, 2022__
            11:46:23 -04'00'

Name: Tamala Skipper

Title: Authorized Representative


Fair Housing Advocates Association, Inc.

By: _____    Date: _____

Name: Vince Curry

Title: Authorized Representative


Lexington Fair Housing Council, Inc.

By: _____    Date: _____

Name: Art Crosby

Title: Authorized Representative

The Miami Valley Fair Housing Center, Inc.

By: _____     Date: _____

Name: Miranda Wilson

Title: Authorized Representative


Fair Housing Contact Services, Inc.

By: _____     Date: _____

Name: Tamala Skipper

Title: Authorized Representative


Fair Housing Advocates Association, Inc.

By: _____     Date: _8/16/22_

Name: Vince Curry

Title: Authorized Representative


Lexington Fair Housing Council, Inc.

By: _____     Date: _____

Name: Art Crosby

Title: Authorized Representative

The Miami Valley Fair Housing Center, Inc.

By: _____     Date: _____

Name: Miranda Wilson

Title: Authorized Representative


Fair Housing Contact Services, Inc.

By: _____     Date: _____

Name: Tamala Skipper

Title: Authorized Representative


Fair Housing Advocates Association, Inc.

By: _____     Date: _____

Name: Vince Curry

Title: Authorized Representative


Lexington Fair Housing Council, Inc.

By: _____     Date: _8/17/22_____

Name: Art Crosby

Title: Authorized Representative

Housing Opportunities Made Equal of Greater Cincinnati, Inc.

By: _elisabeth risch_____   Date: 8/17/2022_____

Name: Elisabeth Risch

Title: Authorized Representative


Fair Housing Center of Central Indiana, Inc.

By: _____   Date: _____

Name: Amy Nelson

Title: Authorized Representative


The Fair Housing Partnership of Greater Pittsburgh, Inc.

By: _____   Date: _____

Name: Megan Confer-Hammond

Title: Authorized Representative


The Fair Housing Resource Center, Inc.

By: _____   Date: _____

Name: Patricia Kidd

Title: Authorized Representative

Housing Opportunities Made Equal of Greater Cincinnati, Inc.

By: _____   Date: _____

Name: Elisabeth Risch

Title: Authorized Representative


Fair Housing Center of Central Indiana, Inc.

By: _____   Date: 8/17/2022

Name: Amy Nelson

Title: Authorized Representative


The Fair Housing Partnership of Greater Pittsburgh, Inc.

By: _____   Date: _____

Name: Megan Confer-Hammond

Title: Authorized Representative


The Fair Housing Resource Center, Inc.

By: _____   Date: _____

Name: Patricia Kidd

Title: Authorized Representative

Housing Opportunities Made Equal of Greater Cincinnati, Inc.

By: _____     Date: _____

Name: Elisabeth Risch

Title: Authorized Representative


Fair Housing Center of Central Indiana, Inc.

By: _____     Date: _____

Name: Amy Nelson

Title: Authorized Representative


The Fair Housing Partnership of Greater Pittsburgh, Inc.

By: _____     Date: 08/17/2022

Name: Megan Confer-Hammond

Title: Authorized Representative


The Fair Housing Resource Center, Inc.

By: _____     Date: _____

Name: Patricia Kidd

Title: Authorized Representative

Housing Opportunities Made Equal of Greater Cincinnati, Inc.

By: _____   Date: _____

Name: Elisabeth Risch

Title: Authorized Representative


Fair Housing Center of Central Indiana, Inc.

By: _____   Date: _____

Name: Amy Nelson

Title: Authorized Representative


The Fair Housing Partnership of Greater Pittsburgh, Inc.

By: _____   Date: _____

Name: Megan Confer-Hammond

Title: Authorized Representative


The Fair Housing Resource Center, Inc.

By: Patricia Kidd  Digitally signed by Patricia Kidd
Date: 2022.08.17 17:18:03 -04'00'   Date: _____

Name: Patricia Kidd

Title: Authorized Representative

# EXHIBIT A

| # | Property | Owner | Address | County | State | C of O |
|---|----------|-------|---------|--------|-------|--------|
| 1 | Beaver Run Senior Apartments | Clover Communities Brighton LLC | 1195 Western Ave | Beaver | PA | (unopened) |
| 2 | Bethel Square Senior Apartments | Clover Communities Bethel Park LLC | 631 McMurray Road | Allegheny | PA | 8/30/2019 |
| 3 | Camillus Point Senior Apartments | Clover Communities Camillus LLC | 3877 Milton Ave | Onondaga | NY | 5/21/2014 |
| 4 | Eastland Court Senior Apartments | Clover Communities Independence LLC | 19301 East Eastland Center Ct | Jackson | MO | 3/25/2019 |
| 5 | Eden Park Senior Apartments | Clover Communities Hamilton LLC | 1740 Eden Park Drive | Butler | OH | 5/3/2019 |
| 6 | Fairfield Village Senior Apartments | Wellclover Holdings LLC  (fka Clover Communities Fairfield LLC) | 520 Patterson Blvd | Butler | OH | 5/3/2019 |
| 7 | Glenwood Square Senior Apartments | Wellclover Holdings LLC  (fka Clover Communities Reminderville LLC) | 3092 Kendal Lane | Summit | OH | 10/3/2016 |
| 8 | Green Ridge Senior Apartments | Clover Communities Scranton, LLC | 1651 Dickson Ave | Lackawanna | PA | 7/16/2014 |
| 9 | Heisley Park Senior Apartments | Clover Communities Painesville LLC | 1504 Jackson St | Lake | OH | (unopened) |
| 10 | Huntington Square Senior Apartments | Wellclover Holdings LLC (fka Clover Communities Medina LLC) | 699 North Huntington St | Medina | OH | 8/17/2017 |
| 11 | Ivy Pointe Senior Apartments | Wellclover Holdings LLC (fka Clover Communities Union LLC) | 732 Clough Pike | Hamilton | OH | 10/12/2018 |
| 12 | Kings Pointe Senior Apartments | Clover Communities Sylvania LLC | 4120 King Rd | Lucas | OH | 5/29/2019 |
| 13 | Lafayette Square Senior Apartments | Clover Communities North Fayette, LLC | 7420 Steubenville Pike | Allegheny | PA | 10/18/2017 |
| 14 | Lakeview Senior Apartments | Clover Communities Beavercreek LLC | 2475 Lillian Lane | Greene | OH | 10/7/2021 |
| 15 | Lorain Point Senior Apartments | Clover Communities Lorain LLC | 5401 North Pointe Pkwy | Lorain | OH | 7/9/2018 |
| 16 | Morgan Square Senior Apartments | Wellclover Holdings LLC (fka Clover Communities Clay LLC) | 8547 Morgan Rd | Onondaga | NY | 8/6/2014 |
| 17 | Oak Hill Senior Apartments | Clover Communities Taylor LLC | 512 Oak Street | Lackawanna | PA | 3/9/2020 |
| 18 | Reynolds Pointe Senior Apartments | Clover Communities Johnson City, LLC | 1035 Anna Maria Drive | Broome | NY | 5/25/2012 |
| 19 | Sheldon Square Senior Apartments | Clover Communities Berea LLC | 125 Sheldon Rd | Cuyahoga | OH | (unopened) |
| 20 | Southpark Senior Square Apartments | Wellclover Holdings LLC (fka Clover Communities Strongsville LLC) | 15100 Howe Rd | Cuyahoga | OH | 6/28/2017 |
| 21 | Willoughby Senior Apartments | Wellclover Holdings LLC (fka Clover Communities Willoughby LLC) | 35100 Chardon Rd | Lake | OH | 6/1/2016 |
| 22 | Cedar Ridge Senior Apartments | Clover Communities Robinson LLC | 319 Cedar Ridge Dr | Allegheny | PA | 12/15/2020 |
| 23 | Gardens on Gateway | Clover Communities McCordsville LLC | 7357 N. Gateway Crossing Blvd | McCordsville | IN | (unopened) |
| 24 | Glenmary Grove Senior Apartments | Clover Communities Bardstown LLC | 8700 Old Bardstown Rd | Jefferson | KY | (unopened) |
| 25 | Lyndon Square Senior Apartments | Clover Communities Ormsby LLC | 911 Ormsby Lane | Jefferson | KY | 10/29/2020 |
| 26 | Meridian Hills Senior Apartments | Clover Communities Urton LLC | 425 Meridian Hills Dr | Jefferson | KY | (unopened) |
| 27 | Pleasant Run Senior Apartments | Clover Communities Indianapolis LLC | 4701 Todd Rd | Marion | IN | 7/15/2020 (final inspection date; no formal C of O) |
| 28 | Preston Village Senior Apartments | Clover Communities Southpoint LLC | 5185 Southpoint Drive | Jefferson | KY | 3/25/2021 |
| 29 | Towne Square Senior Apartments | Clover Communities Hempfield LLC | 1043 Towne Square Drive | Westmoreland | PA | 2/11/2021 |
| 30 | Tucker Station Senior Apartments | Clover Communities Tucker LLC | 1412 Tucker Station Rd | Jefferson | KY | 2/16/2021 |
| 31 | Wynbrooke Senior Apartments | Clover Communities Hendricks LLC | 10318 E. County Road | Marion | IN | (unopened) |
| 32 | Olmsted Falls Senior Apartments | Clover Communities Olmsted Falls LLC | 9299 Columbia Rd | Cuyahoga | OH | 6/29/2020 |
| 33 | Simmons Crossing Senior Apartments | Clover Communities Rossford LLC | 27480 Simmons Road | Wood | OH | 2/11/2021 |
| 34 | Sycamore Creek Senior Apartments | Clover Communities Miamisburg LLC | 2125 Maue Rd | Montgomery | OH | 4/2/2020 |

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK
## SYRACUSE DIVISION

| | |
|---|---|
| CNY FAIR HOUSING, INC.; HOUSING OPPORTUNITIES MADE EQUAL OF BUFFALO, INC.; HOUSING RESEARCH & ADVOCACY CENTER, INC., D/B/A FAIR HOUSING CENTER FOR RIGHTS & RESEARCH, INC.; FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, D/B/A THE FAIR HOUSING CENTER; HOUSING OPPORTUNITIES MADE EQUAL OF GREATER CINCINNATI, INC.; FAIR HOUSING CENTER OF CENTRAL INDIANA, INC.; AND THE FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH, INC. | |
| Plaintiffs, | Civ. Case No. 5:22-cv-278 (GTS/ATB) |
| v. | **COMPLAINT** |
| CLOVER CONSTRUCTION MANAGEMENT, INC.; CLOVER MANAGEMENT, INC.; CLOVER CONSTRUCTION MANAGEMENT WEST, INC.; WELLCLOVER HOLDINGS LLC; CLOVER COMMUNITIES FRIES LLC;  CLOVER COMMUNITIES CAMILLUS LLC; WELL 1031 HOLDCO 1, LLC D/B/A CARLTON HOLLOW APARTMENTS;  JILL JOSEPH TOWER LLC D/B/A JILL JOSEPH TOWER SENIOR APARTMENTS; CLOVER COMMUNITIES LANCASTER LLC; CLOVER COMMUNITIES NEW HARTFORD LLC; CLOVER COMMUNITIES JOHNSON CITY LLC; CLOVER COMMUNITIES SOUTHWESTERN LLC; CLOVER COMMUNITIES SWEETHOME LLC; MUSSACHIO ARCHITECTS P.C.; AND MARC MUSSACHIO | **JURY TRIAL DEMANDED** |
| Defendants. | |

# INTRODUCTION

1. Plaintiffs CNY Fair Housing, Inc.; Housing Opportunities Made Equal of Buffalo, Inc.; Housing Research & Advocacy Center, Inc., d/b/a Fair Housing Center for Rights & Research, Inc.; Fair Housing Opportunities of Northwest Ohio, d/b/a The Fair Housing Center; Housing Opportunities Made Equal of Greater Cincinnati, Inc.; Fair Housing Center of Central Indiana, Inc.; and the Fair Housing Partnership of Greater Pittsburgh, Inc. ("Plaintiffs") bring this action for declaratory, injunctive, and monetary relief for discrimination on the basis of disability in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and New York Human Rights Law, N.Y. Exec. Law § 296, *et seq.*, against the interrelated Defendants that designed or constructed, or own or operate multi-family rental housing complexes that do not comply with the FHA's accessibility requirements. The Defendants are Clover Construction Management, Inc., Clover Management, Inc., Clover Construction Management West, Inc., WellClover Holdings LLC; Clover Communities Fries LLC, Clover Communities Camillus LLC, Well 1031 Holdco 1, LLC d/b/a Carlton Hollow Apartments, Jill Joseph Tower LLC d/b/a Jill Joseph Tower Senior Apartments, Clover Communities Lancaster LLC, Clover Communities New Hartford LLC, Clover Communities Johnson City LLC, Clover Communities Southwestern LLC, Clover Communities Sweethome LLC, (collectively "Clover Defendants"), Mussachio Architects P.C. and Marc Mussachio (collectively "Mussachio").

2. Plaintiffs have uncovered widespread and flagrant violations of the Fair Housing Act's accessibility requirements at thirty-eight of the Clover Defendants' properties in Ohio, New York, Indiana, and Pennsylvania ("Clover Properties"). The exterior areas of the complexes have inaccessible parking spaces, mailboxes, and routes to units and public and common use areas. The apartments have inaccessible routes into and out of the units, bathrooms with

inaccessible features, and other inaccessible features. The inaccessible aspects of the Clover Properties violate the applicable federal and state fair housing laws, pose safety hazards to people with disabilities, signal that people with disabilities are not welcome, and limit housing opportunities for people with disabilities. The harmful effects of the accessibility violations are exacerbated at the Clover Properties because they are advertised as "fully handicapped-accessible" and as "Senior Apartment Communities" for individuals over the age of 55.

3.      Accessible housing is an essential means of ensuring that people with disabilities can find housing and fully participate in community life. More than 30 million Americans aged 15 years and older have disabilities that require their use of a wheelchair, walker, cane, or crutches, or otherwise impair their ability to walk, climb stairs, or engage in other ambulatory activities. Approximately 15 million people over the age of 64 – an age group that comprises a large proportion of those targeted by the Clover Defendants – have difficulty with ambulatory activities. Among those aged 65 and older, roughly two million people use a wheelchair and seven million use a cane, crutches, or walker. With an increasing proportion of the American population over the age of 65, and with the return to the civilian housing market of tens of thousands of veterans with disabilities, the number of persons with disabilities is only likely to increase.

4.      To help ensure that people with disabilities have equal housing opportunities, Congress amended the Fair Housing Act in 1988 to establish basic architectural requirements for the accessible design and construction of residential housing, including most multifamily dwellings. The FHA requires builders, architects, owners, and others involved in the design, construction, and rental of multi-family housing consisting of four or more units and built for first occupancy after March 13, 1991 to design and construct apartment complexes in a manner

that ensures that architectural barriers do not impede access or exclude individuals with disabilities from residing in or visiting the complexes.

5.      The Clover Properties' dwelling units and public and common use areas designed, developed, and/or owned by one or more Defendants have the same or similar design elements that violate the FHA.

6.      Many public and common use areas at the Clover Properties:

   a.   Do not have accessible routes to primary entrances of covered dwelling units, to unit amenities, and to common areas. For example, routes between common and public use areas and from parking areas to units lack accessible curb cuts, can be blocked by parked cars, and have access points that discharge persons in wheelchairs into traffic;

   b.   Lack adequate numbers of accessible parking spaces for residents and visitors with disabilities;

   c.   Lack adequate numbers of parking spaces to permit designated or reserved parking spaces for residents with mobility disabilities; and/or

   d.   Have inaccessible mailboxes located outside of the reach ranges for wheelchair users.

7.      The interiors of covered multifamily units:

   a.   Have inaccessible bathrooms because:

      i.   Bathroom sinks lack the required clear floor space or removable cabinets necessary to allow a person using a wheelchair to use the sink;

      ii.  Bathrooms lack the required clear floor space to allow a person in a wheelchair to enter the shower;

4

     iii.    Upon information and belief, the bathrooms lack reinforcements behind the walls for installation of grab bars;

  b.  Have inaccessible patios because:

     i.    The doors to the patios lack a sufficient opening to allow a person using a wheelchair or walker to pass through them; and/or

     ii.    The height and slope of the patio doors threshold makes them unusable by a wheelchair user.

8.     Defendants' long-standing and continuing practices and policies of developing, constructing, operating, or owning properties that deny people with disabilities full access to and use of these covered multifamily dwellings and common areas, as described herein, discriminate against people with disabilities in violation of the relevant federal and state fair housing laws: the FHA, 42 U.S.C. § 3601, *et seq.*; and New York Human Rights Law, N.Y. Exec. Law § 296, *et seq.*

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 2201; and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

10.    Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District and Division.

## PARTIES AND PROPERTIES

### A. Plaintiffs

11.     Plaintiff CNY Fair Housing, Inc. ("CNY Fair Housing") is a private, nonprofit corporation organized under the laws of New York and registered to do business in New York. Its principal place of business is Syracuse, New York. CNY Fair Housing's mission is to ensure fair housing opportunity for all people in Central and Northern New York. Through education, research, advocacy, and enforcement, CNY Fair Housing works to eliminate housing discrimination and promote open communities. One of CNY Fair Housing's goals is to combat discrimination based on disability and to enable individuals to select and live successfully in their housing of choice without fear of discrimination because of their disabilities.

12.     Plaintiff Housing Opportunities Made Equal of Buffalo, Inc. ("HOME of Buffalo") was founded in 1963 and is a nonprofit fair housing organization doing business in Buffalo, New York.  HOME of Buffalo's activities, purpose, and mission include promoting the value of diversity and ensuring all people, including people with disabilities, an equal opportunity to live in the housing and communities of their choice by providing community education about fair housing; providing technical assistance to government officials, service agencies, and housing providers; providing information about fair housing laws for tenants, landlords, home seekers, home buyers and sellers, and real estate professionals; providing housing and human service information and referral; providing fair housing enforcement services to persons who have encountered housing discrimination; and operating a housing and mobility counseling program designed to help families and individuals obtain safe, quality, affordable housing in well-resourced neighborhoods.

13.     Plaintiff Housing Research & Advocacy Center, Inc., d/b/a the Fair Housing Center for Rights & Research, Inc. ("FHCRR"), founded in 1983, is a nonprofit fair housing and civil rights organization with its principal place of business in Cleveland, Ohio. FHCRR's mission is to protect and expand fair housing rights, eliminate housing discrimination, and promote integrated communities. Through research, educational programs, public policy, and enforcement activities, FHCRR seeks to ensure that all residents are guaranteed equal access to housing without discrimination, including discrimination based on disability.

14.     Plaintiff Housing Opportunities Made Equal of Greater Cincinnati, Inc. ("HOME of Cincinnati"), founded in 1968 and doing business in Cincinnati, Ohio, is a nonprofit organization whose mission is to eliminate unlawful discrimination in housing in the Greater Cincinnati area. This mission is based on the belief that housing is the hub of opportunity and the gateway to a better life. HOME of Cincinnati advocates for and enforces housing regulations for all protected classes, including people with disabilities, and promotes stable, integrated communities.

15.     Plaintiff Fair Housing Opportunities of Northwest Ohio, d/b/a The Fair Housing Center ("The Fair Housing Center") is a nonprofit organization founded in 1975. It is organized under the laws of the state of Ohio and its principal place of business is in Toledo, Ohio. It is dedicated to the elimination of housing discrimination, including discrimination based on disability, the promotion of housing choice, and the creation of inclusive communities of opportunity in the Toledo area.

16.     Plaintiff Fair Housing Center of Central Indiana ("FHCCI") is a private, nonprofit organization incorporated in 2011 with its principal place of business in Indianapolis, Indiana. FHCCI's mission is to ensure equal housing opportunities by eliminating housing discrimination

through advocacy, enforcement, education, and outreach. FHCCI works to eliminate housing discrimination and to ensure equal opportunity for all people, including people with disabilities, through the advancement of more inclusive and welcoming communities.

17.     Plaintiff The Fair Housing Partnership of Greater Pittsburgh, Inc. ("Fair Housing Partnership") has its principal place of business in Pittsburgh, Pennsylvania. Fair Housing Partnership, founded in 1984, is a nonprofit organization organized under the laws of Pennsylvania dedicated to creating and preserving equal housing choice in southwestern Pennsylvania. The organization advocates for fair housing, enforces fair housing laws, provides fair housing education and outreach to the community, and gives fair housing training to housing providers and government officials. The organization maintains a mission of ensuring equal housing choice for all persons, including people with disabilities, through education, fair housing analysis, enforcement actions, outreach, and community organizing.

## B.   Defendants

18.     Defendant Clover Construction Management, Inc. is a for-profit corporation organized under the laws of the state of New York, with its principal offices based in the state of New York. It has participated in the design and construction of Clover Properties named herein, as well as other "Clover Group" multi-family residential properties targeted at seniors. In addition, Clover Construction Management, Inc. developed or owned at least two Clover Properties named here: Olmsted Falls Senior Apartments and Camillus Pointe Senior Apartments.

19.     Defendant Clover Construction Management West, Inc. is a for-profit corporation organized under the laws of the state of Delaware, with its principal offices in Williamsville,

New York. It has participated in the design and construction of Clover Properties named herein, as well as other "Clover Group" multi-family residential properties targeted at seniors.

20. Defendant Clover Management, Inc. is a real estate development and property management company organized under the laws of the state of Delaware, with its principal offices in Williamsville, New York. It owns and/or operates Clover Properties named herein, as well as other "Clover Group" multi-family residential properties targeted at seniors. In addition, on information and belief, Clover Management, Inc. developed and owned at least one of the Clover Properties named here: Sheldon Square Senior Apartments.

21. Defendant Clover Communities Fries LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: Brighton Square Senior Apartments in New York.

22. Defendant Clover Communities Camillus LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: Camillus Pointe Senior Apartments in New York.

23. Defendant Well 1031 Holdco 1, LLC d/b/a Carlton Hollow Apartments is organized in Delaware and does business in New York as the owner of one of the Clover Properties named here: Carlton Hollow Senior Apartments in New York.

24. Defendant Jill Joseph Tower LLC d/b/a Jill Joseph Tower Senior Apartments, is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: Jill Joseph Tower Senior Apartments in New York.

25. Defendant Clover Communities Lancaster, LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: Lancaster Commons Senior Apartments in New York.

26.     Defendant Clover Communities New Hartford LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: New Hartford Square Senior Apartments in New York.

27.     Defendant WellClover Holdings LLC is organized in Delaware and does business in New York as the owner and operator of the Clover Properties named here: Orchard Place Senior Apartments, Transit Pointe Senior Apartments. Seneca Point Senior Apartments, Crestmount Square Senior Apartments, Sandra Lane Senior Apartments, Union Square Senior Apartments, Morgan Square Senior Apartments, and Buckley Square Senior Apartments, all in New York.

28.     Defendant Clover Communities Johnson City LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: Reynolds Pointe Senior Apartments in New York.

29.     Defendant Clover Communities Southwestern LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: South Pointe Senior Apartments in New York.

30.     Defendant Clover Communities Sweethome LLC is organized and has its principal place of business in New York, and is the owner of one of the Clover Properties named here: Sweet Home Senior Apartments in New York.

31.     Defendant Mussachio Architects P.C. is a domestic professional corporation, organized under the laws of the state of New York, with its principal office in Williamsville, New York. It designed and drew the plans for at least twenty-four of the Clover Properties

10

named here,[1] as well as other multi-family residential properties targeted at seniors that have been developed and managed by the Clover Defendants.

32. Defendant Marc Mussachio is an architect licensed in New York and other states. He is the partner in charge of production at Mussachio Architects P.C. His principal place of business is in Williamsville, New York. On information and belief, Marc Mussachio approved the plans for some or all of the properties designed and drawn by Mussachio Architects P.C.

33. In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

34. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by one or more Defendants as principal.

## C. Properties

35. The thirty-eight Clover Properties at issue in this complaint with failures to comply with the FHA's accessibility requirements are:

*New York Properties*

36. Brighton Square Senior Apartments at 300 Fries Rd, Tonawanda, NY.

37. Buckley Square Senior Apartments at 6715 Buckley Rd, Syracuse, NY.

---

[1] Those Properties are: Camillus Pointe Senior Apartments, Morgan Square Senior Apartments, Reynolds Pointe Senior Apartments, Seneca Pointe Senior Apartments, Sweet Home Senior Apartments, Gardens on Gateway Senior Apartments, Pleasant Run Senior Apartments, Wynbrooke Senior Apartments, Eden Park Senior Apartments, Fairfield Village Senior Apartments, Ivy Pointe Senior Apartments, Kings Pointe Senior Apartments, Lorain Pointe Senior Apartments, Olmstead Fall Senior Apartments, Parma Village Senior Apartments, Sheldon Square Senior Apartments, Simmons Crossing Senior Apartments, Southpark Square Senior Apartments, Beaver Run Senior Apartments, Bethel Square Senior Apartments, Cedar Ridge Senior Apartments, Green Ridge Senior Apartments, Lafayette Square Senior Apartments, Oak Hill Senior Apartments, and Town Square Senior Apartments.

38.    Camillus Pointe Senior Apartments at 3877 Milton Ave, Camillus, NY.

39.    Carlton Hollow Senior Apartments at 2000 Carlton Way, Ballston Spa, NY.

40.    Crestmount Square Senior Apartments at 285 Crestmount Ave, Tonawanda, NY.

41.    Jill Joseph Tower Senior Apartments at 66 Custer Street, Buffalo, NY.

42.    Lancaster Commons Senior Apartments at 18 Pavement Rd, Lancaster, NY.

43.    Morgan Square Senior Apartments at 8547 Morgan Rd, Clay, NY

44.    New Hartford Square Senior Apartments at 4770 Middle Settlement Rd, Whitesboro, NY.

45.    Orchard Place Senior Apartments at 133 Orchard Pl, Lackawanna, NY.

46.    Reynolds Pointe Senior Apartments at 1035 Anna Maria Dr, Johnson City, NY.

47.    Sandra Lane Senior Apartments at 705 Sandra Ln, North Tonawanda, NY.

48.    Seneca Pointe Senior Apartments at 1187 Orchard Park Rd, West Seneca, NY.

49.    South Pointe Senior Apartments at 4600 Southwestern Blvd, Hamburg, NY.

50.    Sweet Home Senior Apartments at 1880 Sweet Home Rd, Amherst, NY.

51.    Transit Pointe Senior Apartments at 8040 Roll Rd, East Amherst, NY.

52.    Union Square Senior Apartments at 2341 Union Rd, West Seneca, NY.

*Ohio Properties*

53.    Eden Park Senior Apartments at 1740 Eden Park Drive, Hamilton, OH

54.    Fairfield Village Senior Apartments at 520 Patterson Blvd, Fairfield, OH.

55.    Ivy Pointe Senior Apartments at 732 Clough Pike, Cincinnati, OH.

56.    Kings Pointe Senior Apartments at 4120 King Rd, Sylvania, OH.

57.    Lorain Pointe Senior Apartments at 5401 North Pointe Pkwy, Lorain, OH.

58.    Olmsted Falls Senior Apartments at 9299 Columbia Rd, Olmsted Falls, OH.

59.  Parma Village Senior Apartments at 11500 Huffman Rd, Parma, OH.

60.  Sheldon Square Senior Apartments at 125 Sheldon Rd, Berea, OH.

61.  Simmons Crossing Senior Apartments at 27480 Simmons Rd, Rossford, OH.

62.  Southpark Square Senior Apartments at 15101 Howe Rd, Strongsville, OH.

*Pennsylvania Properties*

63.  Beaver Run Senior Apartments at 1195 Western Ave, Brighton Township, PA.

64.  Bethel Square Senior Apartments at 631 McMurray Rd, Bethel Park, PA.

65.  Cedar Ridge Senior Apartments at 319 Cedar Ridge Drive, Crafton, PA.

66.  Green Ridge Senior Apartments at 1651 Dickson Ave, Scranton, PA.

67.  Harbor Creek Senior Apartments at 4400 East Lake Rd, Erie, PA.

68.  Lafayette Square Senior Apartments at 7420 Steubenville Pike, Oakdale, PA.

69.  Oak Hill Senior Apartments at 512 Oak Street, Taylor, PA.

70.  Towne Square Senior Apartments at 1043 Towne Square Drive, Greensburg, PA.

*Indiana Properties*

71.  Gardens on Gateway Senior Apartments at 7357 N. Gateway Crossing Blvd, McCordsville, IN.

72.  Pleasant Run Senior Apartments at 4701 Todd Rd, Indianapolis, IN.

73.  Wynbrooke Senior Apartments at 10318 E. County Rd 200 N, Indianapolis, IN.

**STATUTORY AND REGULATORY FRAMEWORK**

74.  Congress enacted the FHA's design and construction accessibility requirements as part of a comprehensive revision of the FHA to prohibit discrimination on the basis of disability. The debates and legislative history regarding the accessibility requirements reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded

13

from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying, "No Handicapped People Allowed." In considering the FHA's accessibility requirements, Congress stressed that enforcement of the law is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible to and adaptable by people with disabilities. H.R. REP. No. 100-711, at 25 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

75.     In response to Congressional findings, the FHA mandated that every multi-family building containing four or more dwelling units and built for first occupancy after March 13, 1991 ("covered multifamily dwellings") be subject to certain design and construction requirements. All ground floor units in buildings without elevators and all units in buildings with elevators must include:

a.   Public and common use areas that are readily accessible to, and usable by, people with disabilities;

b.   Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

c.   An accessible route into, through, and out of the dwelling;

d.   Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

e.   Reinforcements in bathroom walls that allow for the later installation of grab bars; and

14

f.  Accessible kitchens and bathrooms designed to allow an individual in a wheelchair to maneuver about the space.

76.     Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHA design and construction regulations in January 1989, *see* 24 C.F.R. § 100.205 (2008). HUD also published the final Fair Housing Act Accessibility Guidelines on March 6, 1991, which incorporate the American National Standards Institute's standards for providing accessibility and usability for physically handicapped people in buildings and facilities, A117-1-1986, *see* 56 Fed. Reg. 9473 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

## FACTUAL BACKGROUND

77.     The Clover Defendants have purchased or developed and currently manage over 6,000 apartment units in large apartment complexes throughout six states. Many of those complexes are specifically designated for seniors over the age of 55 and are advertised as "fully handicapped-accessible."

78.     The Clover Properties at issue here were designed and constructed for first occupancy after March 13, 1991. Each Property consists of one or more buildings with at least four dwelling units. Each building has an elevator. Accordingly, each unit in each building is a "covered multifamily dwelling" and subject to the accessibility requirements of the FHA. The public and common use areas of each property are also subject to the FHA's accessibility requirements.

79.     Multiple existing features at the Clover Properties do not comply with the FHA or HUD's Fair Housing Act Accessibility Guidelines or any other accessibility standards accepted as consistent with the FHA's accessibility requirements.

15

80.     Most of the violations are also inconsistent with and less accessible than applicable state standards and requirements. Furthermore, compliance with state code provisions does not suffice for compliance with the FHA's accessibility requirements.

81.     Plaintiffs have investigated the Clover Properties named herein, including by visiting the properties to evaluate accessibility issues, taking photographs of exterior elements of the property, examining accessible and designated parking issues, testing for discriminatory practices, interviewing residents, reviewing online photographs showing the interior and exterior of units, and reviewing building plans, photographs, occupancy permits, and ownership data. Through their investigations, Plaintiffs uncovered numerous violations of the FHA's accessibility requirements. Plaintiffs are also aware of other properties designed, constructed, owned, and operated by Clover Defendants in areas outside of Plaintiffs' service areas that also contain accessibility violations.

**I.      Exterior Accessibility Violations at Clover Properties**

**a.   Parking-Related Violations**

82.     The Clover Properties consistently have inadequate numbers of accessible parking spaces to serve the needs of their residents and visitors, in violation of the FHA's accessibility requirements. An accessible parking space must be marked by a sign, be at least 8 feet wide, and have an adjacent striped access aisle and curb cut that permits persons using wheelchairs, walkers, or canes to exit their vehicles and reach the sidewalk without having to negotiate a step. There must be at least one accessible parking space for residents at each site amenity and at least 2% of parking spaces serving units must be accessible. In addition, there must be sufficient accessible visitor parking spaces dispersed throughout the site to provide access to grade level

entrances and a minimum of one accessible space at the rental office. The Clover Properties consistently fall short of these requirements.

83.     Due to the lack of accessible parking spaces at the Clover Properties, residents using mobility assistance devices such as wheelchairs and walkers or visitors who pick them up and drop them off frequently cannot find parking that will accommodate them. The photographs below illustrate the absence of accessible parking spaces around access points to Clover Properties, the absence of striped access aisles to prevent cars from blocking access to curb cuts, and the absence of curb cuts.

84.     Clover Properties also do not provide car blocks across their parking lots. As a result, cars parked in parking spaces often protrude over the sidewalks, blocking otherwise accessible routes.



Figure A. Parking area without accessible parking or curb cuts at Parma Village Senior Apartments, Parma, Ohio.

17



Figure B. Parking area without accessible parking or curb cuts, online photo from apartments.com of Camillus Pointe Senior Apartments, Camillus, New York.



Figure C. Car blocking curb cut with no access aisle at Pleasant Run Senior Apartments, Indianapolis, Indiana.



Figure D. Striped access area without curb cut at Pleasant Run Senior Apartments, Indianapolis, Indiana.

**b. Inaccessible Routes to Common Areas**

85.    Clover Properties also lack accessible routes to amenities in the public and common use areas as required by the FHA. Such routes must be at least 36" wide and made of a stable, firm, non-slip material. The routes may not have running slopes greater than 5% without a handrail or cross slopes that exceed 2%.

86.    The routes to common areas at Clover Properties contain slopes that are greater than 5% and fail to connect sidewalks to parking, crosswalks, and amenities. As an example of an inaccessible route to a common use area amenity, at Southpark Square Senior Apartments ("Southpark Square") in Strongsville, Ohio, routes to the picnic, trash, and pet service areas do not meet the FHA's requirements. One Plaintiff also observed inaccessible routes to community rooms such as the outdoor patio adjacent to Southpark Square's Community Room, which is reached by four sliding glass patio doors. None of the doors provide an accessible route to the

19

patio because the threshold is too high. As a result, residents with mobility disabilities seeking to use the patio must use longer, circuitous routes with steps or steep ramps.



Figure E. The slopes on either side of the curb cut exceed 5% and interrupt the accessible route at Pleasant Run Senior Apartments, Indianapolis, Indiana.

**c. Inaccessible Mailboxes**

87.     Plaintiffs discovered that Clover Properties lack accessible mailboxes. Mailboxes with operable parts higher than 48 inches above the floor do not comply with the FHA's accessibility requirements. The clustered mailboxes located in the common area of the Clover Properties include upper rows that are more than 48 inches from the floor level, as exemplified in the photograph below from the Lorain Pointe Senior Apartments ("Lorain Pointe") in Lorain, Ohio. The inaccessible location of the mailboxes is a consistent feature across the Clover Properties.



Figure F. Mailboxes at Lorain Pointe in Lorain, Ohio.

## II.      Interior Accessibility Violations at Clover Properties

### a. Inaccessible Route to Patio

88.     The units at Clover Properties have inaccessible routes to and from the patios. The Clover Properties' patios have sliding doors with a raised threshold that is far in excess of three-quarters of an inch and has a beveled slope greater than 1:2. The drop from the top of the patio door threshold to the pervious deck far exceeds ½ inch, which is the maximum allowable level change between the interior floor and the pervious deck. In addition, the sliding glass patio doors in Clover Properties have a clear opening space less than 31¾ inches, the required minimum clear opening for door entrances. These inaccessible features prevent people with disabilities from utilizing the patio or at a minimum present a hazard to people with mobility disabilities attempting to pass through the door.

21



Figure G. A threshold between an apartment and a patio that exceeds ¾ inch at Camillus Pointe Senior Apartments in Camillus, New York.

 b. **Inaccessible Bathrooms**

 89. Plaintiffs found that the units at Clover Properties have a bathroom design that is not accessible. There is not a clear floor space of 30" x 48" parallel to and centered on the bathroom sink, meaning that a person in a wheelchair cannot pull up parallel to the sink and reach the faucets. In addition, the cabinetry below the sink is not removable and, on information and belief, the area below the sink is not finished and lacks pipe protection for a safe forward approach to the sink for persons using a wheelchair.

 90. There is not a clear floor space of 30" x 48" parallel to the shower and flush with the control wall. A sink or toilet or wall encroaches on the floor space, preventing a wheelchair user from pulling up beside the shower.



Figure H. Online photograph of bathroom in Lorain Pointe which lacks clear floor space parallel to the shower and flush with the control wall because of the sink and the wall between the shower and washer/dryer, accessed January 17, 2022 at https://www.apartments.com/lorain-pointe-senior-apartments-lorain-oh/zm5c4bw/.

91.     Upon information and belief, Plaintiffs also understand that the walls in the bathroom are not reinforced to allow the installation of grab bars if a person with a disability were to require them.

92.     The bathrooms across all Clover Properties contain the same or similar violations, regardless of unit size.



Figure I. Online photograph of a bathroom in Buckley Square Senior Apartments, in Syracuse, New York, with the same layout as Lorain Pointe, accessed March 17, 2022, at https://www.apartments.com/buckley-square-senior-apartments-north-syracuse-ny/n48mqhm/.

93.     The various violations alleged here constitute continuing violations of the FHA and parallel state laws that continue to the present. All Clover Properties have the same or similar violations and the designers, developers, builders, and operators of these properties are the same or related entities, consisting of one or more Defendants. In addition to the Clover Properties named here, Defendants own or operate or have designed or constructed thousands of multi-family rental units targeted at seniors with similar inaccessible design features across Ohio, New York, Pennsylvania, Indiana, Kentucky, and Missouri.

94.     Defendants' actions as described herein were, and remain, intentional, willful, and knowing, and/or have been, and are, implemented with callous and reckless disregard for Plaintiffs' legal rights.

## INJURY TO PLAINTIFFS

95.    As a direct, proximate, and foreseeable result of Defendants' actions as described herein, the Plaintiffs have suffered, continue to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

96.    Defendants' conduct frustrated the Plaintiffs' missions by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal access to housing opportunities, and harming the communities they serve. Plaintiffs have been frustrated in their missions to eradicate discrimination in housing and to carry out the programs and services they provide, including encouraging integrated living patterns for people with disabilities, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

97.    Defendants' unlawful conduct, policies, and practices have forced Plaintiffs to divert their resources to engage in numerous activities, as detailed below, to identify and counteract Defendants' discriminatory conduct.

98.    Defendants' unlawful conduct, policies, and practices have interfered with Plaintiffs' ability to operate.

### Fair Housing Center for Rights & Research

99.    The Fair Housing Center for Rights & Research began its investigation of Clover Properties in 2019 after identifying accessible design and construction concerns during review of Clover Properties in the area and around the country and expanded the scope of its investigation after being informed of additional concerns regarding other forms of disability discrimination.

25

FHCRR's investigation included on-site visits to examine the physical premises to evaluate accessibility issues, collecting and reviewing building plans, occupancy permits, ownership data and other related information, and identifying accessibility violations. The properties that FHCRR investigated are:

    a.  Lorain Pointe Senior Apartments

    b.  Olmsted Falls Senior Apartments

    c.  Parma Village Senior Apartments

    d.  Sheldon Square Senior Apartments

    e.  Southpark Square Senior Apartments

100.    FHCRR has diverted its scarce time and resources to address Defendants' discriminatory conduct, and as a result it has had to divert resources from other work such as filming fair housing videos, pursuing other identified fair housing concerns, launching an agency Marketing Committee, and researching and applying for private foundation grants to diversify agency funding.

101.    FHCRR has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by educating consumers with disabilities and seniors who may become persons with disabilities about their rights under the FHA to be free from discrimination and to live in and enjoy accessible housing. FHCRR has provided disability discrimination-related training to housing providers, publicized information about accessibility, and expanded content in its training materials on the Fair Housing Act's Accessibility Guidelines. In addition, FHCRR 1) has developed a live virtual fair housing training for housing consumers, 2) coordinated and promoted a Fair Housing Accessibility First training for builders, developers, architects and others working in the multi-family housing

industry and local building officials in Northeast Ohio for the purpose of ensuring area builders and developers understand their obligations for accessible design and construction of newly-built multi-family housing, 3) is developing and disseminating to senior-serving organizations a fact sheet on required accessibility features in new multi-family housing, 4) is developing and will disseminate a blog post on this topic and will promote on its website and social media an educational video to accompany the release of its fact sheet on this topic.

102.    FHCRR's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

### HOME of Cincinnati

103.    HOME of Cincinnati began its investigation of Clover Properties in 2019 after being informed of possible disability discrimination.  Its investigation included conducting testing for discriminatory practices, contacting and visiting local government offices to view and copy certificates of occupancy and plans, and evaluating accessibility issues. The properties that HOME of Cincinnati investigated are:

a.   Eden Park Senior Apartments

b.   Fairfield Village Senior Apartments

c.   Ivy Pointe Senior Apartments

104.    HOME of Cincinnati has diverted its scarce time and resources to address Defendants' discriminatory conduct, and as a result it has had to divert resources from other work, such as investigating and providing education on other forms of discrimination like discrimination based on race and national origin. HOME of Cincinnati's Research Advocate had to divert her time away from promoting integrated communities, including a project to

27

increase Black homeownership. Additionally, a Testing Coordinator had to be pulled from other investigations.

105. HOME of Cincinnati has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by educating local housing consumers and housing providers about accessibility, and preparing for and conducting an April 2021 Fair Housing Summit that focused on housing accessibility. HOME of Cincinnati's staff held a special Enforcement Meeting to develop an action plan to counter Defendants' discriminatory actions. It is creating a video entitled Fair Housing Design & Construction Accessibility Requirements to be shared on its website and all social media platforms such as Facebook and Twitter. The Education Coordinator will be reaching out to the social workers at senior buildings to train them regarding the accessibility requirements. She will also design a new training that solely focuses on accessibility requirements. HOME of Cincinnati is also putting together a special training for local builders and architects in its area to train them on Fair Housing Design and Construction Accessibility Requirements.

106. HOME of Cincinnati's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

***Fair Housing Opportunities of Northwest Ohio, d/b/a The Fair Housing Center***

107. The Fair Housing Center began its investigation of Clover Properties in 2021 when it received a complaint from a resident who has a disability and who resides at Kings Pointe Senior Apartments in Sylvania, Ohio. Her complaint addressed a lack of accessible parking at Kings Pointe and the failure of the property to provide a designated parking space.

28

The Fair Housing Center's investigation included on-site visits to evaluate accessibility issues and inspecting publicly available building plans and occupancy permits. The properties that The Fair Housing Center investigated are:

    a.   Kings Pointe Senior Apartments

    b.   Simmons Crossing Senior Apartments

108.    The Fair Housing Center has diverted its scarce time and resources to address Defendants' discriminatory conduct, and as a result it has had to divert resources from other work, such as assisting other individuals experiencing housing discrimination in the area that The Fair Housing Center serves.

109.    The Fair Housing Center has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by providing information and resources to the community about how the Fair Housing Act protects persons with disabilities and advocating for more accessible housing in The Fair Housing Center's service area.

110.    The Fair Housing Center's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

### *CNY Fair Housing, Inc.*

111.    Plaintiff CNY Fair Housing, Inc. began its investigation of Clover Properties in 2019 when it was contacted by residents at Camillus Pointe Senior Apartments in Camillus, New York. The residents reported inadequate accessible parking spaces near entrances to the building with a lack of curb cuts, a lack of parking spaces that could be reserved for residents with

disabilities, inaccessible patio doorways, inaccessible bathroom layouts, and other problems for persons with disabilities living in the property. CNY Fair Housing representatives have interviewed numerous residents, requested increased numbers of accessible and designated parking spaces, located and reviewed plans and occupancy permits, and in conducting on-site investigations, have identified accessibility violations at each property. The properties that CNY Fair Housing investigated are:

a. Buckley Square Senior Apartments

b. Camillus Pointe Senior Apartments

c. Carlton Hollow Senior Apartments

d. Morgan Square Senior Apartments

e. New Hartford Square Senior Apartments

f. Reynolds Pointe Senior Apartments

112. CNY Fair Housing has diverted its scarce time and resources to address Defendants' discriminatory conduct, and as a result it has had to divert resources from other work, such as an investigation of residency preferences in housing assistance programs, an investigation of race discrimination in real estate sales, and a research project on zoning regulations and segregation.

113. CNY Fair Housing has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by spending staff time investigating the subject properties, conducting education and outreach in the community on accessibility requirements under the Fair Housing Act, and conducting continued monitoring of the subject properties to ensure accessibility issues are addressed. Specifically, CNY Fair Housing spent staff time conducting on-site investigations of the subject properties, interviewing

tenants about accessibility issues, and securing and reviewing planning documents, including architectural drawings and site plans. CNY Fair Housing has conducted training sessions and hosted information tables for seniors and service providers working with seniors on accessibility requirements under the Fair Housing Act and has provided training for local planning officials on design and construction requirements. CNY Fair Housing will conduct future workshops and information sessions to area residents to educate them on accessibility requirements, will develop new outreach materials and a video on design and construction requirements, and will conduct trainings for code enforcement officials on accessibility requirements for new construction. CNY Fair Housing will also continue to monitor current and future Clover properties through testing and outreach to tenants to ensure that the disability-related needs of tenants are addressed.

114.    CNY Fair Housing's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

### *HOME of Buffalo*

115.    Plaintiff HOME of Buffalo began its investigation of Clover Properties in 2019 after being informed of possible disability discrimination. The investigation included conducting tests at properties in the Buffalo, New York area and collecting copies of plans and certificates of occupancy for the properties. The Clover Properties investigated by HOME of Buffalo's and/or are located in the organization's service area are:

a.   Brighton Square Senior Apartments

b.   Crestmount Square Senior Apartments

c.   Jill Joseph Tower Senior Apartments

31

    d.   Lancaster Commons Senior Apartments

    e.   Orchard Place Senior Apartments

    f.   Sandra Lane Senior Apartments

    g.   Seneca Pointe Senior Apartments

    h.   South Pointe Senior Apartments

    i.   Sweet Home Senior Apartments

    j.   Transit Pointe Senior Apartments

    k.   Union Square Senior Apartments

116.     Plaintiff HOME of Buffalo has diverted its scarce time and resources to address Defendants' discriminatory conduct. When HOME of Buffalo uncovers evidence of discrimination, it is compelled to divert scarce resources to address the discriminatory activity through public education and outreach, advocacy, training and consulting, counseling and referral services, and enforcement actions. Due to the necessity to not only remedy past discrimination, but to take action to prevent similar discrimination from occurring in the future, HOME of Buffalo engaged in public outreach and education to counteract harms, specifically directed at communities likely to have been affected by the discriminatory conduct. As a result, it has had to divert resources from other work such as counseling, referral services, education, and the promotion of equal access to housing in Western New York.

117.     Plaintiff HOME of Buffalo has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by devoting considerable staff time and resources to identifying the nature and scope of Defendants' discriminatory conduct and taking actions to mitigate its discriminatory impact. Prior to filing this action, HOME of Buffalo devoted staff time, engaged in community outreach, and

conducted a public education campaign to raise awareness among tenants, housing providers, and policymakers. These counteraction activities differ and are in addition to HOME of Buffalo's regular, day-to-day activities and were undertaken as a direct response to the Defendants' discriminatory practices. Each activity was contemporaneously documented in a central timekeeping system.

118.    Plaintiff HOME of Buffalo's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

*Fair Housing Partnership of Greater Pittsburgh*

119.    The Fair Housing Partnership began its investigation of Clover Properties after being informed of possible disability discrimination in 2018. Its investigation included evaluating the properties with site visits as well as with municipal documentation reviews at Clover Properties in western and northeastern Pennsylvania. The Fair Housing Partnership expended significant resources investigating Defendants' conduct and counteracting Defendants' noncompliance with design and construction requirements. Specifically, the Fair Housing Partnership spent staff time conducting on-site investigations of the subject properties as well as securing and reviewing planning documents, including architectural drawings and site plans. FHP's staff have traveled far geographical distances in western Pennsylvania from its Pittsburgh, PA office to the property sites and to the municipal buildings that house the properties' building and site plans as well as the certificates of occupancy. The Clover Properties in FHP's service area and/or investigated by the organization are:

    a.   Beaver Run Senior Apartments

    b.   Bethel Square Senior Apartments

    c.   Cedar Ridge Senior Apartments

    d.   Green Ridge Senior Apartments

    e.   Harbor Creek Senior Apartments

    f.   Lafayette Square Senior Apartments

    g.   Oak Hill Senior Apartments

    h.   Towne Square Senior Apartments

120.    The Fair Housing Partnership's diversion of time and other resources to address Defendants' discriminatory conduct has forced it to divert its scarce resources from other work such as preparing required reports for HUD (its funding agency), investigating claims of unlawful discrimination by other victims of discrimination, and conducting fair housing education and outreach on other types of cases.

121.    The Fair Housing Partnership has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by conducting outreach to groups and agencies that serve people with disabilities and to seniors about design and construction compliance, educating municipal officials about design and construction compliance, developing and distributing a fact sheet on design and construction compliance, as well as conducting a print and digital marketing campaign on design and construction compliance. The Fair Housing Partnership will also continue to monitor the ongoing development of new construction Clover properties.

122.    The Fair Housing Partnership's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue

34

until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

***Fair Housing Center of Central Indiana***

123.     Plaintiff FHCCI began its investigation of Clover Properties in June of 2021, after being informed of possible disability discrimination. The investigation included on-site visits to examine the physical premises and evaluate accessibility issues, collecting and reviewing building plans and ownership data, analysis of discriminatory practices, and identifying accessibility violations.  The properties that FHCCI investigated are:

   a.  Gardens on Gateway Senior Apartments

   b.  Pleasant Run Senior Apartments

   c.  Wynbrooke Senior Apartments

124.     FHCCI has diverted its scarce time and resources to address Defendants' discriminatory conduct, and as a result it has had to divert resources from other work, such as investigations into accessibility and new design and construction violations; education programs to advance knowledge of fair housing laws; preparing reports on fair housing issues; and public policy changes to expand fair housing protections.

125.     FHCCI has expended, continues to expend, and will expend in the future resources to counteract the effects of Defendants' discrimination by distribution of a fair housing accessibility design and construction video, distribution of disability topical fact sheets and information; fair housing disability focused trainings; and disability focused PSA campaigns.

126.     FHCCI 's investigation and counteraction of Defendants' conduct, its diversion of resources, and the frustration of its mission continues and will continue until Defendants' discriminatory conduct ceases and the harms caused by Defendants' actions are remedied.

## CAUSES OF ACTION

### Count I: Violation of the Fair Housing Act of 1968, as amended
### 42 U.S.C. § 3601, *et seq.*
### (Against All Defendants)

127.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

128.     Through the actions and inactions described above, Defendants, together and separately, have:

      a.     discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

      b.     discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

      c.     failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulation, 24 C.F.R. § 100.205 (2008).

129.     Defendants have deliberately, intentionally, and willfully disregarded their obligations under the FHA, with callous and reckless disregard for Plaintiffs' legal rights.

130.     The frequency and similarity of violations at public and common use areas and in individual units identified in the investigation by Plaintiffs at thirty-eight Clover Properties demonstrate that Defendants have engaged in a pervasive and on-going pattern of designing and constructing dwelling units in violation of the FHA's accessibility requirements.

131. As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

### Count II: Violation of New York Human Rights Law
### N.Y. Exec. Law § 296, *et seq.*
### (Against Defendants that own, operate, designed, or constructed Properties in New York)

132. Defendants' conduct as described herein constitutes:

    a. Discrimination in the rental of, or otherwise making unavailable or denying housing accommodations to persons because of their disabilities in violation of N.Y. Exec. Law § 296-5(a)(1);

    b. Discrimination in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of disability in violation of N.Y. Exec. Law § 296-5(a)(2);

    c. Failure to design and construct dwellings in compliance with the requirements mandated by of N.Y. Exec. Law § 296-18(3)

133. As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in N.Y. Exec. Law § 297-9.

### PRAYER FOR RELIEF

134. WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grant judgment in its favor, and against Defendants, as follows:

    a. Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and N.Y. Exec. Law § 296;

    b. Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of

the conduct described herein and to prevent additional instances of such conduct or

similar conduct from occurring in the future;

c.   Awarding compensatory damages to each Plaintiff in an amount to be determined by

a jury that would fully compensate each Plaintiff for the injuries caused by the

conduct of Defendants alleged herein;

d.   Awarding punitive damages in an amount to be determined by a jury that would

punish Defendants for the willful, wanton, and reckless conduct alleged herein and

that would effectively deter similar conduct in the future;

e.   Awarding reasonable attorneys' fees and costs; and

f.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

135.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues

triable as of right.

Dated: March 22, 2022

<u>/s/ Conor Kirchner</u>
Conor Kirchner (Bar Roll #518898)                Reed N. Colfax*
Casey Weissman-Vermeulen (Bar Roll #702110)      Sara K. Pratt*
CNY Fair Housing, Inc.                           Soohyun Choi**
731 James Street, Suite 200                      RELMAN COLFAX PLLC
Syracuse, NY 13203                               1225 19th Street, N.W., Suite 600
(315) 471-0420                                   Washington, D.C. 20036
cjkirchn@cnyfairhousing.org                      (202) 728-1888
cweissman-vermeulen@cnyfairhousing.org           (202) 728-0848 (facsimile)
                                                 rcolfax@relmanlaw.com
                                                 spratt@relmanlaw.com

                                                 *  *Pro Hac Vice Application to be
                                                 Submitted*
                                                 ***Application for membership in
                                                 NDNY pending*

38

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CNY Fair Housing, Inc., et al. (See addendum)

### DEFENDANTS
Clover Construction Management, Inc., et al. (See addendum)

**(b)** County of Residence of First Listed Plaintiff   Onondaga County, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See addendum.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C.§ 3601, et seq.
Brief description of cause:
Violation of the Fair Housing Act of 1968, as amended.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
03/22/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Conor Kirchner

**FOR OFFICE USE ONLY**

RECEIPT # ANYNDC-5846690   AMOUNT $402.00   APPLYING IFP _____   JUDGE GTS   MAG. JUDGE ATB

5:22-cv-278

## ADDENDUM TO CIVIL COVER SHEET

**I.(a)**

**PLAINTIFFS**

CNY Fair Housing, Inc.; Housing Research & Advocacy Center, Inc., d/b/a Fair Housing Center for Rights & Research, Inc.; Fair Housing Opportunities of Northwest Ohio, d/b/a The Fair Housing Center; Housing Opportunities Made Equal of Greater Cincinnati, Inc.; Fair Housing Center of Central Indiana, Inc.; The Fair Housing Partnership of Greater Pittsburgh, Inc.; and Housing Opportunities Made Equal of Buffalo, Inc.

**DEFENDANTS**

Clover Construction Management, Inc.; Clover Management, Inc.; Clover Construction Management West, Inc.; WellClover Holdings LLC; Clover Communities Fries LLC; Clover Communities Camillus LLC; Well 1031 Holdco 1, LLC d/b/a Carlton Hollow Apartments; Jill Joseph Tower LLC d/b/a Jill Joseph Tower Senior Apartments; Clover Communities Lancaster LLC; Clover Communities New Hartford LLC; Clover Communities Johnson City LLC; Clover Communities Southwestern LLC; Clover Communities Sweethome LLC; Mussachio Architects P.C.; and Marc Mussachio

**I.(c) Attorneys**

Conor Kirchner (Bar Roll #518898)
Casey Weissman-Vermeulen (Bar Roll #702110)
CNY Fair Housing, Inc.
731 James Street, Suite 200
Syracuse, NY 13203
(315) 471-0420
cjkirchn@cnyfairhousing.org
cweissman-vermeulen@cnyfairhousing.org

Reed N. Colfax*
Sara K. Pratt*
Soohyun Choi**
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (facsimile)
rcolfax@relmanlaw.com
spratt@relmanlaw.com
schoi@relmanlaw.com
*Pro Hac Vice Application to be Submitted*
**Admission to NDNY Pending*

1