**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CLOVER COMMUNITIES BEAVERCREEK, LLC, et al.,
individually and as assignees of the claims of CNY Fair
Housing, Inc. et al.,                                            5:22-cv-278 (BKS/ML)

                                    Plaintiffs,

v.

MUSSACHIO ARCHITECTS P.C. and MARC
MUSSACHIO,

                                    Defendants.

---

**Appearances:**

*For Plaintiffs:*
Elizabeth A. Kraengel
Gregory P. Photiadis
Duke Holzman Photiadis & Gresens LLP
701 Seneca Street, Suite 750
Buffalo, NY 14210

*For Defendants:*
Conor V. McDonald
Christopher Albanese
Milber Makris Plousadis & Seiden, LLP
100 Manhattanville Road, Suite 4E20
Purchase, NY 10577

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs, twenty-eight entities who own senior housing complexes, filed an amended

complaint on February 16, 2023, against Defendants Mussachio Architects P.C. and Marc

Mussachio, asserting claims for breach of contract; professional malpractice; contribution under

New York Civil Practice Law and Rules ("CPLR") 1401; violation of the Fair Housing Act of

1968 ("FHA"), as amended, 42 U.S.C. § 3601 et seq.; violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; violation of Ohio's unlawful discriminatory practices statute, Ohio Rev. Code § 4112.02 et seq.; violation of Indiana Fair Housing Law, Ind. Code § 22-9.5-5-5 et seq.; and violation of Kentucky unlawful housing practices, Ky. Rev. Stat. § 344.360 et seq. (Dkt. No. 71).[1] More specifically, the amended complaint asserts direct claims for: (1) contribution under CPLR 1401 for "an amount [of Plaintiffs' settlement with the Assignors[2]] commensurate with Defendants['] own negligence or wrongdoing, up to 68%" of damages paid; (2) breach of contract against Defendant Mussachio Architects; and (3) professional malpractice against both Defendants, (*id.* ¶¶ 118–43), and assigned claims for violation of the FHA, NYSHRL, Ohio's unlawful discriminatory practices statute, Indiana Fair Housing Law, and Kentucky unlawful housing practices, (*id.* ¶¶ 144–61).

On March 9, 2023, Defendants filed a motion to dismiss the amended complaint in its entirety. (Dkt. No. 74). The Court issued a ruling on June 7, 2023, dismissing with prejudice Plaintiff's professional malpractice claim but otherwise denying without prejudice Defendants' motion. *See Clover Communities Beavercreek, LLC v. Mussachio Architects P.C.*, No. 22-cv-278, 2023 WL 3864965, at *11, 2023 U.S. Dist. LEXIS 98826, at *33 (N.D.N.Y. June 7, 2023).

On July 5, 2023, Defendants filed a renewed motion to dismiss Plaintiffs' assigned FHA and state fair housing law claims. (Dkt. No. 78). This motion, presently before the Court, is fully briefed, (Dkt. Nos. 78–80), and the Court assumes familiarity with the factual history of this case

---

[1] A list of Plaintiffs and the properties associated with each is set forth in the appendix to this decision.

[2] The Assignors are the Original Plaintiffs—CNY Fair Housing, Inc.; Housing Opportunities Made Equal of Buffalo, Inc.; Housing Research & Advocacy Center, Inc., d/b/a Fair Housing Center for Rights & Research, Inc.; Fair Housing Opportunities of Northwest Ohio, d/b/a The Fair Housing Center; Housing Opportunities Made Equal of Greater Cincinnati, Inc.; Fair Housing Center of Central Indiana, Inc.; and The Fair Housing Partnership of Greater Pittsburgh, Inc., (*see* Dkt. No. 1)—and five additional Fair Housing Groups—Fair Housing Resource Center, Inc.; Miami Valley Fair Housing Center, Inc.; Lexington Fair Housing Council, Inc.; Fair Housing Advocates Association, Inc.; and Fair Housing Contact Service, Inc., (*see* Dkt. No. 71, ¶¶ 45–49; Dkt. No. 71-1, at 2).

as set out in the Court's June 7, 2023 decision, *Clover*, 2023 WL 3864965, at *1–3, 2023 U.S. Dist. LEXIS 98826, at *1–7. For the following reasons, Defendants' renewed motion to dismiss is granted in part and denied in part.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

Defendants move to dismiss Plaintiffs' assigned FHA and state fair housing law claims. (Dkt. No. 78-1). Plaintiffs oppose Defendants' motion as to the assigned FHA claims. (Dkt. No. 79-1, at 10–29). The parties dispute whether FHA claims are assignable and, if they are, whether the fact that the FHA claims at issue here were purportedly assigned to entities who themselves may be liable under fair housing laws for the same alleged violations—and who settled those claims—alters the assignability analysis in this instance. (*See* Dkt. Nos. 78-1, 79-1). However, Plaintiffs "do not oppose" Defendants' motion as to the state fair housing law claims. (Dkt. No. 79, at 3; Dkt. No. 79-1, at 6). Accordingly, the Court finds that Plaintiffs have explicitly abandoned these claims, *see Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y.

2018) ("Courts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008))), and these claims are dismissed with prejudice, *see Fantozzi v. City of New York*, 343 F.R.D. 19, 32 (S.D.N.Y. 2022) (dismissing claims that were abandoned on motion to dismiss); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 8-cv-442, 2014 WL 4723299, at *7, 2014 U.S. Dist. LEXIS 133839, at *16–17 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." (citation omitted)). The Court's further discussion of Defendants' motion is therefore limited to the assigned FHA claims.

### A.    Single-Satisfaction Rule

Before addressing the assignability of FHA claims, the Court must first consider whether the FHA claims at issue here were extinguished by the single-satisfaction rule before they were assigned to Plaintiffs. *See In re Nat'l Mortg. Equity Corp. Pool Certificates Sec. Litig.*, 636 F. Supp. 1138, 1148–49 (C.D. Cal. 1986) (addressing the question "whether a party who has been fully compensated for an injury nonetheless may assign its claims to someone else" and noting that "once an injured party is fully compensated for its injury, whether by a tortfeasor or someone else, its claim is extinguished by operation of law, and there simply is nothing remaining for the injured party to assign" (internal citation omitted)); *In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 309 (S.D.N.Y. 2005) (discussing *National Mortgage*), *rev'd on other grounds*, 503 F.3d 89 (2d Cir. 2007). It is well established that a plaintiff is entitled only to one satisfaction of each injury. *See, e.g.*, *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) (quoting Restatement (Second) of Torts § 885(3) (1979)). Thus, if the Assignors were fully compensated for their injuries under the FHA, their FHA claims were extinguished—and

the assignability of FHA claims is moot in this instance because there was nothing remaining for them to assign to Plaintiffs.

In *National Mortgage*, the court considered whether claims arising under different federal laws—stemming from sham transactions allegedly perpetrated by the defendants to siphon investor funds for their personal benefit—had been extinguished before they were assigned to the plaintiff. The court found that a RICO claim had not been paid off in full even though "the [original claimant's] actual damages were completely . . . satisfied," because RICO has a treble damages provision and "any award less than *that* amount constitutes an incomplete recovery." *National Mortgage*, 636 F. Supp. at 1152 (emphasis added). The court explained that although "it could be argued that . . . the entire RICO claim should be deemed extinguished[] because no actual damages remain," the approach "more likely to effectuate the purposes for which RICO was enacted" is to say "that since the one-satisfaction rule diminishes a plaintiff's claim 'at least to the extent of the payment made,' . . . payment[] [of actual damages] should constitute compensation for only the first one-third of the treble damages to which the [injured party] would have been entitled under [the statute]." *Id.* at 1151. Accordingly, the court concluded that the original claimant had not received full compensation for its RICO claim and, consequently, that the claim had not been extinguished. *See id.* at 1152.

On the other hand, the court in *National Mortgage* found that a federal securities claim, as well as related state securities and common law fraud claims, had been paid off in full and, thus, extinguished before they were assigned. *Id.* at 1147–51. Importantly, with respect to these claims there was no dispute "as to whether the amount that the plaintiff paid to the injured parties was equivalent to the full value of the losses they suffered as a result of the fraudulent scheme." *NYSE Specialists*, 405 F. Supp. 2d at 309. In *NYSE Specialists*, by contrast, there was a dispute

"as to whether the sums paid [pursuant to various settlement orders were] equivalent to the full value of the losses suffered by the [injured parties]." *Id.* In that case, the court concluded that dismissal was not warranted, observing that "in the event that [the plaintiffs'] claims are otherwise viable, the proper course is for discovery to go forward and for the [defendants] to interpose the double-recovery defense at an appropriate phase of this litigation." *Id.* (citing *Hayes v. Gross*, 982 F.2d 104, 109 (3d Cir. 1992) (noting that an otherwise well-pleaded claim should not be dismissed if "double recovery is not inherent in plaintiff's theory of the case and, accordingly, that recovery without duplication is possible")).

As in *NYSE Specialists*, in this case there is a dispute as to whether the sums paid pursuant to the settlement agreement amount to the full value of the losses suffered by the Original Plaintiffs. Defendants contend that "by virtue of the Settlement Agreement" Plaintiffs "fully compensated the [Original Plaintiffs] for their FHA . . . claims." (Dkt. No. 78-1, at 17 (citing Dkt. No. 71-1)). Plaintiffs, however, argue that the settlement agreement "expressly carves out and reserves the claims as against [Defendants]," who were not party to the agreement. (Dkt. No. 79-1, at 18–19 (citing Dkt. No. 71-1, at 18 ("Nothing in the above releases shall be construed as any party to this Agreement releasing any claims . . . that any party to this Agreement may have against Mussachio Architects, P.C., or Marc Mussachio."))). Plaintiffs further argue that "the Original Plaintiffs . . . have not been paid in an amount equal to or in excess of their loss" and that "[t]here is no evidence before this Court that Original Plaintiffs have been fully compensated for the Assigned Claims, which would include actual and punitive damages, reasonable attorney's fees and costs." (*Id.* at 17, 19).

The Court agrees with Plaintiffs that a factual question remains as to whether the Original Plaintiffs were fully compensated for their injuries under the FHA. Under these circumstances,

accepting as true all factual allegations in the amended complaint and drawing all reasonable inferences in Plaintiffs' favor, the Court cannot at this juncture determine as a matter of law that the assigned FHA claims are barred by the single-satisfaction rule. However, the Court notes that Defendants may assert the double-recovery defense at an appropriate stage in the proceedings. *See In re Platinum Beechwood Litig.*, No. 18-cv-6658, 2023 WL 6210626, at *1, 2023 U.S. Dist. LEXIS 167343, at *29–30 (S.D.N.Y. Sept. 25, 2023) (noting that under New York General Obligations Law Section 15-108, "a court must reduce the damages award against the non-settling defendant by the amounts the plaintiff already obtained from other defendants through settlement," and observing that such an offset "'protect[s] non-settling defendants' by ensuring that a defendant who chooses not to settle but is nevertheless found liable 'pay[s] only [that defendant's] commensurate share of the damages.'" (quoting *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 108 (S.D.N.Y. Dec. 21, 2022) (second and third alterations in original)).

### B.   Assignability

Whether an FHA claim may be assigned is apparently a question of first impression—and one with respect to which the FHA is itself silent. *See* 42 U.S.C. § 3601 et seq. Federal law governs the assignability of claims created by federal statute. *See, e.g.*, *DNAML Pty, Ltd. v. Apple Inc.*, No. 13-cv-6516, 2015 WL 9077075, at *3, 2015 U.S. Dist. LEXIS 168245, at *7–8 (S.D.N.Y. Dec. 16, 2015) (noting that "the issue of assignability of a federal statutory claim is itself an issue of federal law"); *Cooper v. Credit Mgmt., LP*, No. 22-cv-1011, 2022 WL 17995551, at *3 nn.6–7, 2022 U.S. Dist. LEXIS 232961, at *6–7 nn.6–7 (N.D. Tex. Dec. 29, 2022) (collecting decisions that "persuasively reason that where a claim for relief is created by a federal statute, federal law governs the assignability of the claim"). This is "consistent with ordinary choice of law principles." *DNAML Pty, Ltd.*, 2015 WL 9077075, at *3, 2015 U.S. Dist. LEXIS 168245, at *7. "Under virtually all choice-of-law regimes, the jurisdiction's law that

7

governs whether a cause of action exists will also be the jurisdiction that decides whether that cause of action can be assigned." *Id.* (citing Caleb Nelson, *The Persistence of General Law*, 106 Colum. L. Rev. 503, 544 (2006)).

Defendants argue that the "[assignability] analysis turns upon whether [permitting] assignment would frustrate the purpose of the federal law." (Dkt. No. 78-1, at 14). According to Defendants, permitting Plaintiffs to pursue the assigned FHA claims "would be contrary to the statutory scheme and purpose of the FHA" as it would "enable[] [them] to insulate [themselves] from liability for [their] own failure to ensure compliance with the FHA." (*Id.* at 13–16). In support of this position, Defendants cite *Ondimar Transportes Maritimos v. Beatty Street Properties, Inc.*, in which "the Fifth Circuit refused to permit a co-tortfeasor to settle with an injured party whose claim arose under federal maritime law, obtain an assignment from the injured party, and then proceed against the non-settling tortfeasor, as it would have been inconsistent with the goals of the maritime law's proportionate liability framework." (*Id.* at 13–14 (citing 555 F.3d 184, 187 (5th Cir. 2009))). Plaintiffs respond that the "broad remedial intent" of the FHA "in fact would be advanced" if assignment is allowed "because [Defendants are] the primary wrongdoer[s]." (Dkt. No. 79-1, at 11). Moreover, Plaintiffs argue, "federal courts have routinely held that certain actions arising under federal law may be assigned." (*Id.* at 11–12) (citing cases involving ERISA, antitrust, Worker Adjustment and Retraining Notification Act, and Labor Management Relations Act claims, and noting that in both cases[3] cited by Defendants for the "proposition that 'analysis turns upon whether the assignment would frustrate the purpose

---

[3] *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.*, 777 F. Supp. 493, 495 (E.D. La. 1991); *Fed. Ins. Co. v. Parello*, 767 F. Supp. 157, 160 (N.D. Ill. 1991).

of the federal law'" the courts concluded that the claims were assignable without addressing how the purpose of the underlying federal laws might be frustrated).

The Court is unpersuaded by the comparison Defendants draw between this case and *Ondimar*. The *Ondimar* court reached its conclusion—that "permitting a co-tortfeasor to settle with the injured party, obtain an assignment from that injured party, and proceed against the nonsettling potential tortfeasor is inconsistent with the goals of [maritime law's] proportionate liability framework"—in the context of admiralty and maritime law. 555 F.3d at 187. Maritime law has a proportionate liability framework that "prohibit[s] [] contribution claims between a settling defendant and a co-tortfeasor." *Id.* at 188. The *Ondimar* court was therefore concerned that, although tort claims are generally assignable, "[p]ermitting assignment [in that case] would permit an easy end run around [the] prohibition of contribution claims." *Id.* As the Court has explained, however, the FHA does not prohibit contribution claims. *See Clover*, 2023 WL 3864965, at *4–7, 2023 U.S. Dist. LEXIS 98826, at *10–20. Accordingly, the Court is less concerned in this context with Plaintiffs doing through the back door what they could not do through the front.

Moreover, permitting Plaintiffs to pursue the assigned FHA claims may advance—rather than frustrate—the purpose of the FHA. As relevant here, the FHA makes it unlawful to "discriminate in the sale or rental" of a dwelling or to "otherwise make unavailable or deny" a dwelling "because of a handicap," 42 U.S.C. § 3604(f)(1); and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" because of a handicap, *id.* § 3604(f)(2). *See also id.* § 3604(f)(3)(C) (defining "discrimination" to include a "failure to design and construct" covered dwellings in accordance with certain accessibility standards); *cf. S&R Dev.*

*Estates, LLC v. Town of Greenburgh*, 336 F. Supp. 3d 300, 310 (S.D.N.Y. 2018) ("The FHA penalizes actions that, in any way, 'make unavailable' any dwelling to any person 'because of race, sex, familial status, or national origin.'" (quoting 42 U.S.C. § 3604(a))). The declared policy of the FHA is "to provide . . . for fair housing throughout the United States." 42 U.S.C. § 3601. As explained by the Supreme Court, Congress enacted the FHA "to eradicate discriminatory practices within a sector of our Nation's economy." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539 (2015) (citations omitted); *see also Fair Hous. Justice Ctr., Inc. v. JDS Dev. LLC*, 443 F. Supp. 3d 494, 502 n.2 (S.D.N.Y. 2020) (citing the Act's legislative history, which states that the Act "is a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream"). The FHA is "results-oriented" and emphasizes the consequences of an actor's actions, rather than his or her intent. *S&R Dev. Estates*, 336 F. Supp. 3d at 310; *see also Fair Hous. Justice Ctr. Inc. v. Lighthouse Living LLC*, No. 20-cv-4066, 2021 WL 4267695, at *5, 2021 U.S. Dist. LEXIS 181505, at *14 (S.D.N.Y. Sept. 20, 2021) (noting that "liability under the FHA for discriminatory design and construction is imposed broadly" and that "any entity who contributes to a violation" may be liable (citations omitted)). Additionally, the "goals of the FHA . . . are 'regulatory rather than compensatory,'" *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 598–99 (4th Cir. 2010) (quoting 42 U.S.C. § 3601), and compliance with the FHA is "nondelegable" in that an owner cannot "insulate himself from liability" by "relinquishing the responsibility for preventing . . . discrimination to another party," *id.* at 602 (citation omitted). Thus, "[a]llowing an owner to completely insulate itself from liability for an . . . FHA violation through contract diminishes its incentive to ensure compliance with discrimination laws." *Id.*

The amended complaint alleges that Defendants discriminated by "fail[ing] to design dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulation." (Dkt. No. 71, ¶ 145). Although Defendants argue that the purpose of the FHA—the provision of fair housing—would be frustrated if responsible parties such as Plaintiffs were permitted to pursue the assigned FHA claims arising in part from their alleged violations, the same could be said if Plaintiffs were not permitted to pursue the assigned FHA claims. In that case, Defendants, also alleged violators of the FHA, would be insulated from liability under the Act. *See City of Los Angeles v. AECOM Servs., Inc.*, 854 F.3d at 1156 (expressing concern about "the potential for contractors to shield themselves from any liability they caused"). This would reduce Defendants' incentives to comply with the FHA, which in turn frustrates the objective of the FHA to provide fair housing, including by designing and constructing multifamily dwellings in accordance with the Act's accessibility guidelines. *See id.* at 1161 (noting that "precluding contract clauses for contribution reduces a contractor's incentives to do so"); *cf. Williams v. Marinelli*, 987 F.3d 188, 201 (2d Cir. 2021) (concluding that the deterrent effect of a Section 1983 award "is eviscerated" if the constitutional tortfeasor is "relieved of the bulk of the financial consequences of the violation").

Finally, the Court notes that although the FHA does not expressly permit assignment, neither does it prohibit assignment. *See* 42 U.S.C. § 3601 et seq. The Second Circuit has in other contexts assumed federal claims to be assignable absent statutory language to the contrary. *See, e.g., D'Ippolito v. Cities Serv. Co.*, 374 F.2d 643, 647 (2d Cir. 1967) (antitrust claims[4]); *Bluebird Partners, L.P. v. First Fid. Bank, N.A. N.J.*, 85 F.3d 970, 973 (2d Cir. 1996) (securities claims).

---

[4] Courts require assignments of antitrust claims to be express. *See, e.g., DNAML Pty, Ltd.*, 2015 WL 9077075, at *3, 2015 U.S. Dist. LEXIS 168245, at *7 (citing *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437–38 (3d Cir. 1993). However, the assignment at issue in this case is express, (Dkt. No. 71-2), so the Court need not decide whether assignments of FHA claims must always be express.

And the same is true of other circuits. *See, e.g.*, *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1090 (3d Cir. 1980) ("[T]he status of assignments under the Sherman and Clayton Acts is a matter of federal law[] and . . . a number of cases have assumed that such assignments are valid.").

Based on the foregoing—and mindful that the Supreme Court has instructed courts construing the FHA "to give [] 'generous construction' to the statute's 'broad and inclusive' language"—the Court concludes that FHA claims are assignable. *Lakeside Resort Enters., LP v. Bd. of Supervisors of Palmyra Twp.*, 455 F.3d 154, 156 (3d Cir. 2006) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

### C.     *In Pari Delicto*

Defendants also assert what amounts to the *in pari delicto* defense, arguing that Plaintiffs, alleged violators of the FHA, "should not be able to step into the shoes of the Original Plaintiffs." (Dkt. No. 78-1, at 21). However, the Supreme Court has "often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes." *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968), *overruled on other grounds* by *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984). Consequently, the fact that Plaintiffs—like Defendants—are alleged violators of the FHA should not by itself preclude them from pursuing the assigned FHA claims which otherwise advance the public policy in favor of the provision of fair housing. *See National Mortgage*, 636 F. Supp. at 1156 (noting in the context of a RICO action that "[t]he fact, if it be a fact, that [the plaintiff] may to some extent be embarking on this litigation with unclean hands should not by itself prohibit the [plaintiff] from bringing an action that otherwise advances RICO's broad anti-racketeering policies").

In any event, "[a]lthough . . . some courts have applied [the *in pari delicto*] doctrine in the context of a motion to dismiss, the better approach is to await a factual record to make this determination." *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, No. 17-cv-61, 2018 WL 8370060, at *13, 2018 U.S. Dist. LEXIS 226067, at *39 (D. Vt. Dec. 20, 2018); *see also Republic of Iraq v. ABB AG*, 768 F.3d 145, 162 (2d Cir. 2014) ("Comparison of the parties' degree of fault, and thus the applicability of [*in pari delicto*], will often depend on findings of fact as to the circumstances of a plaintiff's involvement."); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 311 n.21 (1985) (noting it was "inappropriate[ to] resolv[e] the question of [a party's] fault solely on the basis of the allegations set forth in the complaint"). Therefore, the Court leaves open the impact on this litigation of Plaintiffs' own alleged violation of the FHA for a later stage of the proceedings.

Accordingly, the Court denies without prejudice Defendants' renewed motion to dismiss as to the assigned FHA claims.

IV.     **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants' renewed motion to dismiss, (Dkt. No. 78), is **GRANTED in part**; and it is further

**ORDERED** that Plaintiffs' state fair housing law claims (Counts V – VIII) are **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants' renewed motion to dismiss, (Dkt. No. 78), is otherwise **DENIED**.

IT IS SO ORDERED.

Dated: January 29, 2024
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

13

**APPENDIX**
(all citations to the amended complaint (Dkt. No. 71))

| Plaintiff | Associated Properties |
|---|---|
| Clover Communities Beavercreek LLC | Lakeview Senior Apartments (Ohio) (¶¶ 10, 61) |
| Clover Communities Berea LLC | Sheldon Square Senior Apartments (Ohio) (¶¶ 11, 62) |
| Clover Communities Bethel Park LLC | Bethel Square Senior Apartments (Pennsylvania) (¶¶ 12, 63) |
| Clover Communities Brighton LLC | Beaver Run Senior Apartments (Pennsylvania) (¶¶ 13, 64) |
| Clover Communities Camillus LLC | Camillus Point Senior Apartments (New York) (¶¶ 14, 65) |
| Clover Communities Hamilton LLC | Eden Park Senior Apartments (Ohio) (¶¶ 15, 66) |
| Clover Communities Independence LLC | Eastland Court Senior Apartments (Missouri) (¶¶ 16, 67) |
| Clover Communities Johnson City, LLC | Reynolds Pointe Senior Apartments (New York) (¶¶ 17, 68) |
| Clover Communities Lorain LLC | Lorain Point Senior Apartments (Ohio) (¶¶ 18, 69) |
| Clover Communities North Fayette, LLC | Lafayette Square Senior Apartments (Pennsylvania) (¶¶ 19, 70) |
| Clover Communities Scranton, LLC | Green Ridge Senior Apartments (Pennsylvania) (¶¶ 20, 71) |
| Clover Communities Sylvania LLC | Kings Pointe Senior Apartments (Ohio) (¶¶ 21, 72) |
| Clover Communities Taylor LLC | Oak Hill Senior Apartments (Pennsylvania) (¶¶ 22, 73) |
| Wellclover Holdings LLC | Huntington Square Apartments, Glenwood Square Apartments, Southpark Square Senior Apartments, Willoughby Hills Senior Apartments, Fairfield Village Senior Apartments, Ivy Pointe Senior Apartments (all in Ohio); and Morgan Square Senior Apartments (New York) (¶¶ 23, 74–80) |

14

| Plaintiff | Associated Properties |
|---|---|
| Clover Communities Painesville LLC | Heisley Park Senior Apartments (Ohio) (¶¶ 24, 81) |
| Clover Communities Miamisburg LLC | Sycamore Creek Senior Apartments (Ohio) (¶¶ 25, 82) |
| Clover Communities Olmsted Falls LLC | Olmstead Falls Senior Apartments (Ohio) (¶¶ 26, 83) |
| Clover Communities Rossford LLC | Simmons Crossing Senior Apartments (Ohio) (¶¶ 27, 84) |
| Clover Communities Hempfield LLC | Towne Square Senior Apartments (Pennsylvania) (¶¶ 28, 85) |
| Clover Communities Hendricks LLC | Wynbrooke Senior Apartments (Indiana) (¶¶ 29, 86) |
| Clover Communities Indianapolis LLC | Pleasant Run Senior Apartments (Indiana) (¶¶ 30, 87) |
| Clover Communities McCordsville LLC | Gardens on Gateway (Indiana) (¶¶ 31, 88) |
| Clover Communities Bardstown LLC | Glenmary Grove Senior Apartments (Kentucky) (¶¶ 32, 89) |
| Clover Communities Ormsby LLC | Lyndon Square Senior Apartments (Kentucky) (¶¶ 33, 90) |
| Clover Communities Robinson LLC | Cedar Ridge Senior Apartments (Pennsylvania) (¶¶ 34, 91) |
| Clover Communities Southpoint LLC | Preston Village Senior Apartments (Kentucky) (¶¶ 35, 92) |
| Clover Communities Tucker LLC | Tucker Station Senior Apartments (Kentucky) (¶¶ 36, 93) |
| Clover Communities Urton LLC | Meridian Hills Senior Apartments (Kentucky) (¶¶ 37, 94) |